# Rufo *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Defect in street—Safer way—Proximate cause—Case for jury.*

1. A municipality is bound to keep its highways in fairly safe travelable condition and travelers are entitled to presume that it will do so. When a traveler has knowledge of a defect in a highway it does not follow as a legal conclusion that he must under all circumstances avoid the use of it and reach his destination in some other way.

2. Where trenches have been dug by a municipality to the middle line of a street, but the remainder of the street is safe, a widow of a driver who is killed by his wagon falling into a trench is entitled to have a verdict in her favor sustained, where the testimony shows that the deceased and the public generally had been using the safe side of the street up to the time of the accident, and that the accident resulted from the sudden blocking of the way by the coming together of two automobiles. In such a case it is for the jury to say whether the deceased should have used another and safer way.

3. In an action against a municipality to recover damages for the death of a driver whose wagon fell into a trench in a street, the case is for the jury where the evidence is contradictory as to whether the accident was due to the frightening of the horses, and whether the decedent did or did not have his team under such control as might have enabled him to avert the accident.

Argued Oct. 9, 1914. Appeal, No. 9, Oct. T., 1914, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1913, No. 1,721, on verdict for plaintiff in case of Emilia Rufo v. Philadelphia. Before Rice, P. J., Orlady, Head, Henderson, Kephart and Trexler, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before Omerod, P. J., specially presiding.

At the trial it appeared that the deceased, Donato Rufo, was killed on March 3, 1913, while driving a team of two horses westward on Callowhill street between Sixty-third street and Gross street. Along the north side of the cartway of Callowhill street were trenches dug to the middle line of the street. These had been in

existence for some time. The south part of the cartway was safe, and had been used by the deceased and the public generally to the time of the accident. As Rufo neared Gross street an automobile came close to his wagon from the rear, and at the same time another automobile coming south on Gross street proceeded to turn eastward into Callowhill street. There was evidence although contradicted that the horses took fright. They at all events moved to the right, causing the front wheel of the wagon to go into the trench. Rufo was pitched from his seat and killed. There was also evidence, although contradicted, that the deceased did not have the reins in his hand when the accident happened, but that they were wrapped around the brake handle. The court submitted the case to the jury.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*M. J. McEnery,* assistant city solicitor, with him *Michael J. Ryan,* city solicitor, for appellant.—There was no case for the jury: Swanwick v. Monongahela City, 36 Pa. Superior Ct. 630; Forks Twp. v. King, 84 Pa. 230; Hill v. Tionesta Twp., 146 Pa. 11; Purcell v. Riebe, 227 Pa. 503; Cresson Twp. v. Anderson, 114 Pa. 643; Conrad v. Upper Augusta Twp., 200 Pa. 337; Haven v. Bridge Co., 151 Pa. 620; Bechtel v. Mahanoy, City Borough, 30 Pa. Superior Ct. 135; Schaeffer v. Jackson Twp., 150 Pa. 145; Nichols v. Pittsfield Twp., 209 Pa. 240.

*Thomas F. Gain,* with him *Alfred L. Cameron,* for appellee.

OPINION BY TREXLER, J., February 24, 1915:

In the case before us the decedent was acquainted with Callowhill street, knew of its condition and the

trenches which existed and took the way which apparently was most convenient to him in preference to other streets which were in better condition. When we revert to the testimony we find, however, that Callowhill street could not be termed an unsafe street. The trenches which rendered part of it unsafe existed only to the middle of the street and the remaining half of the street was used generally by the public and could be used in safety. In view of these facts the trial judge could not as a matter of law declare the decedent guilty of contributory negligence. The municipality is bound to keep its highways in fairly safe travelable condition and travelers are entitled to presume that it will do so. When a traveler has knowledge of a defect in a highway it does not follow as a legal conclusion that he must under all circumstances avoid the use of it and reach his destination in some other way: Steck v. City of Allegheny, 213 Pa. 573; March v. Phœnixville Boro., 221 Pa. 64; Shetulski v. Mount Carmel Boro., 57 Pa. Superior Ct. 85; Kuhns v. Upper Allen Township, 57 Pa. Superior Ct. 386; McManamon v. Hanover Township, 232 Pa. 439; Patterson v. Philadelphia, 56 Pa. Superior Ct. 651. As was said by Brother HENDERSON in Stonecipher v. Booth & Flinn, Ltd., 51 Pa. Superior Ct. 50, "One using a highway which is open for public travel is not necessarily guilty of negligence because he does not take another and safer route. Where the danger is so great and imminent that a person of ordinary prudence would avoid it the court may say as a matter of law that the use of the more dangerous way is an act of negligence, but it is only when this imminent and obvious danger is clearly made to appear that the court can so act."

The decedent and his fellow travelers had been using Callowhill street on the west side safely and it was only when particular circumstances arose, the sudden blocking of the way by the coming together of two automobiles, that decedent suffered damages by reason of the bad condition of the east side. His usual use of

the street did not require the "testing" of the danger, the term used in some of the decisions, and he ordinarily could safely pass. It was for the jury to determine whether he should have foreseen such a concurrence of dangers as he encountered upon the day of the accident.

The other point raised is that the proximate cause of the injury was the frightening of the horses and that the decedent at the same time did not have his team under such control as might have enabled him to avert the accident. This proposition may be answered that there was contradictory testimony in regard to the conduct of the decedent on the day of the accident and the court could not assume that the horses were frightened and that their fright caused the accident, nor could it assume that decedent had not control of the animals. Some testimony is to the effect that he had control of the animals and that the fright of the horses was caused by his falling against them. Surely it was for the jury to learn from the testimony what the true facts were and the court could not usurp that function. The matter was left to the jury in an adequate charge and we see no reason for disturbing the verdict.

All the assignments of error are overruled and the judgment is affirmed.